P.003                                        5510741                           MAR-10-1997 16:40

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

ENGA STURNS,                      )
                                  )
        Plaintiff,                )
                                  )
vs.                               )     CIVIL ACTION No. CV-96-S-0176-M
                                  )
GADSDEN PROGRESS COUNCIL, Inc.)
d/b/a/ J.W. STEWART HEADSTART )
PROGRAM, d/b/a HEADSTART,          )
                                  )
        Defendant.                )
_____ )





ENTERED

MAR 1 0 1997.

MEMORANDUM OPINION

    This action is before the court on defendant's motion for

summary judgment.    Plaintiff, who was pregnant during her

employment with defendant, alleges she was terminated by defendant

in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e et seq.   Upon consideration of the motion, briefs,

pleadings, and evidentiary submissions, this court concludes that

defendant's motion is due to be denied.[1]

## I.   STATEMENT OF FACTS

    During late October or early November 1994, Enga Sturns

applied to defendant, Head Start, for a position as a health/social

services aide.    Sturns was interviewed for the position by Ms.

Kathryn Barrett, Head Start Program Director, and Ms. Lillie Mae

---

    [1] The briefs considered in relation to the subject motion are: (1)
defendant's Initial Submission in Response to Exhibit C of the Court's Order on
Summary Judgment; (2) plaintiff's Reply Submission in Response to Exhibit "D" of
the Court's Order; and (3) defendant's Reply Submission in Response to Exhibit
C of the Court's Order on Summary Judgment.

    The court has also considered the following evidentiary submissions: (1)
defendant's Evidence Submitted in Response to Exhibit C of the Court's Order on
Summary Judgment; and (2) plaintiff's Submission of Evidence in Opposition to
Defendant's Motion for Summary Judgment.

24

P.004                                           5510741                               MAR-10-1997 16:40

Harris. (Plaintiff's Deposition, at 9.) On the date of that interview, Sturns knew she was four to five months pregnant, but she made no mention of her condition. (*Id.*, 11.)[2] The fact is significant because, during the interview, Barrett emphasized to Sturns that there was a great deal of work to be done, and that it was "urgent that we hire someone as soon as possible." (Barrett Deposition, at 30.) Barrett asked Sturns if there was any reason of which Sturns was aware that would keep her from working on a regular basis. (*Id.*) Despite knowing she was pregnant, Sturns answered with an emphatic "No." (*Id.*)

Sturns was offered the job on November 11, 1994, and she began work on November 21, 1994, with a 90-day probationary period. (Plaintiff's Complaint, ¶ 4; Defendant's Exhibit 2: Attendance Record for Enga Sturns.) Sturns contends she notified Barrett of her pregnancy on her first day at work by handing her a note from Dr. David E. Sherman. (Plaintiff's Deposition, at 11.) The note confirmed that Sturns was pregnant, but added that no work limitations were required at that time. (Plaintiff's Exhibit 8: November 15, 1994 Letter from Dr. Sherman.)

Barrett does not recall being given the note from Sturns' doctor, but does recall confronting Sturns about rumors of Sturns' pregnancy in December of 1994. (Barrett Deposition, at 40, 42-43.) Sturns confirmed the rumor, and Barrett told Sturns she was "disappointed ... because I emphasized very emphatically during the interview of the agency's needs and that we definitely needed

---

[2] Plaintiff's due date was March 23, 1995. (Plaintiff's Complaint, ¶ 5.)

2

someone who could provide continuing attendance and satisfactory performance." (*Id.*, 42-43.)

Sturns quickly learned that, indeed, there was a great deal of work to be done in her new position. Sturns worked initially for James B. Adams, the Social Services Coordinator. (Plaintiff's Deposition, at 23.) Sturns observed that Adams was "behind on a lot of stuff." (*Id.*) Later, Sturns worked for Rebecca Tinker, who Sturns also noted was involved in "a lot of work." (*Id.*, 26.)

Sturns and Barrett met in December of 1994, and Barrett informed Sturns that she would be discharged for the following reasons:

> due to my pregnancy that I would be unable to work and once the baby got here that I would have to find someone to keep my child and that she needed someone that could be there and someone that could work.

(Plaintiff's Deposition, at 22.) Accordingly, Barrett told Sturns that she would be required to leave on February 21, 1995 - the last day of her 90-day probationary period. (*Id.*) Barrett met with Sturns again in February, and informed Sturns that she would be allowed to stay until March 10, 1995. (*Id.*) Barrett decided to extend Sturns' work period until March, "[o]ut of compassion." (Barrett Deposition, at 45.) Sturns' last day at work was March 3, 1995. (Plaintiff's Exhibit 6: Head Start Weekly Attendance Sheets.)

During the three and one-half months Sturns worked at Head Start, she was late for work 17 times; she left work early on four days; and she was absent on five days. (Plaintiff's Exhibit 6: Head Start Weekly Attendance Sheets.)

3

## II.   MOTION FOR SUMMARY JUDGMENT

### A.   Standard of Review

According to Rule 56(c), Fed.R.Civ.P., summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..."

The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(*per curiam*). Rule 56 permits the movant to discharge this burden *with* or *without* supporting affidavits. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *Spence v.*

4

MAR-10-1997  16:41                   5510741                        P.007

*Zimmerman*, 873 F.2d 256 (11th Cir. 1989).  Inferences in favor of
the  non-movant  are  not,  however,  unqualified.    "Mere  general
allegations which do not reveal detailed and precise facts will not
prevent the award of summary judgment."  *Resolution Trust Corp. v.
Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted).
Moreover, evidence that is merely colorable, *see Brown v. City of
Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see
Peppers  v.  Coates*,  887  F.2d  1493,  1498  (11th  Cir.  1989),  or
conjectural, does not create a genuine issue of material fact.

        Thus, if the reasonable fact finder evaluating the evidence
*could* draw more than one inference from the facts, and if that
inference introduces a genuine issue of material fact, then the
court should not grant summary judgment.  *Augusta Iron & Steel
Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir.
1988).  A "genuine" dispute about a material fact exists if the
"evidence is such that a reasonable jury could return a verdict for
the nonmoving party."  *Jeffery*, 64 F.3d at 594 (quoting *Anderson v.
Liberty  Lobby,  Inc.*,  477  U.S.  242,  248,  106  S.Ct.  2505,  2510
(1986)).   The  bottom  line  is  "whether  the  evidence  presents  a
sufficient disagreement to require submission to a jury or whether
it is so one-sided that one party must prevail as a matter of law."
*Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

**B.    Pregnancy Discrimination Under Title VII**

        Title VII provides that it is an unlawful employment practice
for an employer to discharge an individual because of her sex.  *See*
42 U.S.C. § 2000e-2(a)(1).  After the Supreme Court concluded Title

5

VII did not proscribe discrimination on the basis of pregnancy, *see*
*General Elec. Co. v. Gilbert*, 429 U.S. 125, 145-46, 97 S.Ct. 401,
412 (1976), Congress modified Title VII by enacting the Pregnancy
Discrimination Act of 1978 (PDA), which provides:

> The terms "because of sex" or "on the basis of sex"
> include, but are not limited to, because of or on the
> basis of pregnancy, childbirth, or related medical
> conditions; and women affected by pregnancy, childbirth,
> or related medical conditions shall be treated the same
> for all employment-related purposes; including receipt of
> benefits under fringe benefit programs, as other persons
> not so affected but similar in their ability or inability
> to work.

42 U.S.C. § 2000e(k) (emphasis added).  Thus, Sturns' claim is
cognizable under Title VII.

C.   **Sturns' Evidence of Discrimination**

        Sturns  says  Barrett  gave  the  following  reason  for  her
discharge:

> due to my pregnancy that I would be unable to work and
> once the baby got here that I would have to find someone
> to keep my child and that she needed someone that could
> be there and someone that could work.

(Plaintiff's Deposition, at 22 (emphasis added).)  This evidence,
if believed, would establish that defendant was terminated "because
of" or "on the basis of" her pregnancy.  "A woman is ... protected
against such practices as being fired ... merely because she is
pregnant."  29 CFR App. to Pt. 1604.[3]

---

[3] In General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401 (1976),
the Supreme Court suggested the degree to which courts should defer to the
E.E.O.C.'s interpretation of Title VII: "[w]e consider that the rulings,
interpretations and opinions of the Administrator under this Act, while not
controlling upon the courts by reason of their authority, do constitute a body
of experience and informed judgment to which courts and litigants may properly
resort for guidance...." (citations omitted).

6

Defendant cites two cases in support of its motion for summary judgment: *Ahmad v. Loyal American Life Insurance Company*, 767 F. Supp. 1114 (S.D. Ala. 1991), and *Page v. Chandonnet*, 1989 WL 206563 (D. Md. 1989).

In *Ahmad*, 767 F. Supp. 1114,[4] the court held that an insurance company could lawfully withdraw an offer of employment to a claims examiner applicant when she disclosed she was four months pregnant. According to the court, the company had a legitimate business justification in seeking to employ someone who could provide help to its overburdened claims department in the immediate future. *Id.* at 1119.

In *Page*, 1989 WL 206563, the pregnant employee failed to inform her employer that she was several months pregnant when she interviewed for the job. The employee missed several days of work because of her pregnancy, and was eventually discharged. The court concluded that the plaintiff was fired because of her absence from work and her dishonesty, not her pregnancy. *Id.* at *5.

> In the final analysis, ... plaintiff was terminated because she would need time off in April and May and because she was thought to have been less than candid with the company. ... Plaintiff would have been treated no differently if she had suffered another disability unrelated to childbirth or pregnancy.

---

[4] One commentator has noted "the logic of [*Ahmad*], while a technically correct application of disparate treatment theory, may be of more academic than practical significance. In the typical hiring case too many proof and appearance-of-impropriety issues would be raised by rejecting an applicant on that basis. For example, the company's inquiries into pregnancy status or plans would give rise in most cases to a substantial inference of disparate treatment, since male applicants rarely confront similar inquiries. For these reasons, the logic of the *Ahmad* decision is unlikely to afford substantial protection to employers as a practical matter." B. Lindemann & P. Grossman, *Employment Discrimination Law* 443 (3d ed. 1997).

7

*Id.* at *4.

Defendant correctly draws the following comparisons from the facts of this case, *Ahmad* and *Page*:

> In all three cases, the employer had a need for a new employee to be on the job for an initial uninterrupted period. In each case, the employer made this need known before the hiring and (in the cases of Page and Sturns) asked the prospective employee if there was an[y] potential problem. In each case, the employee was hired and almost immediately announced, "Oh, by the way, I need to take some extended time off in a few months."

(Defendant's Brief, at 3.) Yet, there is a key distinction between this case and those two. Both *Page* and *Ahmad* were bench trials in which the judge acted as the trier of fact in ruling in the employers' favor. Thus, in those two cases the courts weighed the credibility of the witnesses and determined that the plaintiffs were terminated because of permissible factors (absences and dishonesty), and not because of an impermissible factor (pregnancy). In this case, plaintiff claims she was told by Barrett that her employment was terminated "due to my pregnancy." (Plaintiff's Deposition, at 22.) Defendant says plaintiff was terminated due to her absences and dishonesty. Those two positions are in conflict, and a reasonable fact finder could draw more than one conclusion from the evidence. This court concludes "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512. Defendant's motion for summary judgment is therefore due to be denied.

8

## III.   CONCLUSION

For the foregoing reasons, this court concludes that defendant's motion for summary judgment is due to be denied. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this _10th_ day of March, 1997.

United States District Judge

9